ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* FARR.

Opinion delivered March 15, 1902.

CARRIER—PASSENGER INJURED WHILE ALIGHTING.—When the name of a station is called, and soon thereafter the train is brought to a standstill, and there are no circumstances to indicate that the train has not reached the station, a passenger may reasonably conclude that it has stopped at the station, and may recover damages if she is injured by the train being negligently started while she was in the act of alighting.

Appeal from Johnson Circuit Court.

WILLIAM L. MOOSE, Judge.

Affirmed.

STATEMENT BY THE COURT.

The complaint is to the effect that on the 6th day of January, 1899, plaintiff took passage on defendant's passenger train at Fort Smith for Knoxville, a station on defendant's railroad extending from Fort Smith, Arkansas, to Little Rock, Arkansas; that the defendant's employees on the train carelessly announced the station of Knoxville before reaching it, stopped the train about two hundred yards from the station, and negligently permitted plaintiff, induced by the announcement of the station and the conduct of the employees, to believe that the stop was for the purpose of unloading passengers for that station, and to attempt to alight from the train; that while she was attempting to alight from the train, as she was in the act of stepping from the bottom step of the plat-

form of the coach, the employees caused it to start with a sudden jerk, threw her to the ground, broke her left leg just above the ankle, dislocated her ankle, and otherwise severely bruised and hurt her; that, as a result of these injuries, she was confined to her bed for more than three months, was unable to walk for more than six months, during all of which time she suffered great pain, and was unable to perform labor; that her leg is crooked at the point of fracture, and unable to support the weight of her body; that the injuries, from which she still suffers much pain, have made her a cripple for life, and caused her to expend money for medical assistance and attention; and that in consequence of the injuries she has sustained damages in the sum of $10,000.

The answer denies everything stated in the complaint, including the allegation of injury, and then proceeds to aver that any injury she may prove was caused by her negligence.

Kate Farr, plaintiff, testified: "I live at Bonanza, ten miles south of Fort Smith. On the 6th day of January, 1899, I bought a ticket from Fort Smith to Knoxville over defendant's road, and took the morning train for that place. I was going to Mr. Garrior's place, which is about three miles from Knoxville. The conductor of the train took up my ticket, which was for Knoxville, and I told him I was going to Knoxville. Just before the train reached Knoxville, the porter came through, and called out the station, saying, 'Knoxville!' About a minute after this announcement, the train stopped, and I thought we were at the station. No one notified me that we had not reached the station. I got my packages, left my seat, went out on the platform, the regular place for passengers to get off, and started to step off, thinking the train had arrived at my destination, and that I was required to get off. Just as I started to step off, the train started, pitched me off, and broke my leg, both bones, and sprained my ankle. I don't know how long I suffered from that injury. I am still suffering from it. I was confined to my room for three months. I can hardly walk on that leg now. It pains me to walk. When I do walk, I have to walk very slowly. I can walk without a support, but I need one. Every step pains me. The injury was more painful than anything I ever experienced. It was very painful all the time, but at some times more painful than others. Some times I could not sleep. I do not object to showing the condition of my ankle, where the sprain and break were, to the jury. It is very

badly out of shape. [Here the injured ankle was shown to the jury.] I do not remember what the ticket from Fort Smith to Knoxville cost me. The train ran about a quarter of a mile after the porter announced 'Knoxville,' and then stopped. I saw nothing in the surroundings there to indicate that we had not reached the station. There was nothing to lead me to suppose that the train was not at the depot. I had been at Knoxville but once before, at which time I remained fifteen or twenty minutes. There was no platform at the depot; only some coal slack, as there was where I got off. I saw this coal slack there at the time, and it was the same way for some distance south of there.

I had been to Mr. Garrior's place before, in September, 1898. I went through the country by private conveyance. I left there the 16th of December. Where I got hurt was about 200 yards west of the depot. I saw nothing to indicate that I was not at the depot when I got off. I did not see the depot house. When the porter announced the station, I began to get ready to get off. Mr. Garrior's little girl was with me. When the porter called the station, I called her to me. The train had not entirely stopped when I got up. I saw no one about the door when I went out. I got off on the side the station was on. The train, after it had stopped, started up with a sudden movement,—a jerk. The little girl had got off then. I acted in this way: I got my packages, valise and baggage, went out on the platform, and went down the steps. I did not gather up the packages, and, with the little girl, run out of the train. I did not push the little girl off, and jump after her. I could see there was no platform there. I did not see the depot. I did not stop to investigate about that. I knew the train was still, and I supposed it was at the station. It was just a little time after the train stopped until it started up again. The train had not entirely stopped when I got up and started out, but it stopped before I got out. I went on down the steps to get off, and it started again. I was standing still when I started to get off. I did not tell Miss Annie Lee Crowder 'that before the train slowed up the porter came through and called "Knoxville," and when the train slowed up, I took the little girl and went out, and she jumped off, and I thought she was hurt, and jumped off after her;' nor did I make that statement in substance to Ella Kelton. I did not tell Benjamin Stewart that the porter came through and called out the station, and that just about that time the train

slowed up, and I thought it was the station; that the train started up again, upon which I thought I would be carried by the station; and that the little girl and I ran out; that she jumped off, and then I jumped off. I did not tell him that, if the little girl had not jumped off, I would not. I did not make that statement to George Atkins."

Argus Jett testified: "I am twenty-three years old. On the 6th day of January, 1899, I got on the train from Fort Smith to Little Rock, at Clarksville, and went from there to Knoxville. Miss Kate Farr was a passenger in the same coach that I was in. The train stopped near the end of the switch before arriving at Knoxville. A short time before it stopped there, the porter announced the station of Knoxville. Immediately after this announcement, the train slowed up, and stopped about 150 yards from the station. Soon after it began to slow up the plaintiff left her seat, approached the front door, and passed out. The train stopped, I would say, from half of a minute to a minute. It stopped still. No directions were given to the passengers after the porter announced the station of Knoxville. The elevation of the ground where the train stopped is about the same as at the depot. They have no plank platform at the depot." Cross-examination: "The plaintiff was seated near the middle of the car. A little girl was with her and went out ahead of her. The lady had some small packages. After stopping and starting up, the train stopped at the depot, and I and a young lady who was with me got off. I do not remember that any other passenger got off there. There was a train on the side track at Knoxville, but I do not know why the passenger train stopped. The train reached Knoxville between 9 and 10 o'clock. The depot was in plain view from where the train stopped." Redirect examination: "The track of the railroad at Knoxville is on a straight line, and a person standing on the platform of the car could not see the depot without leaning over."

John Crowder testified: "I was at Knoxville at the time of the accident to the plaintiff. The train came to a stop, and about the time it started up a little girl, who was ahead of the plaintiff, stepped off, and the lady jumped off and fell. They were both getting off at the same steps. The train started up with a kind of jerk. This jerk occurred just near the time the lady got off. The stop was about 100 yards from the depot. I was standing in Mr. Hammond's store, about a hundred yards off, opposite to where the injury occurred."

There was testimony corroborating that of plaintiff, and that of the witnesses above set out, and to show that where the train is said to have been when plaintiff got off, the ground where she alighted was of the same height as at the depot house; that there was no platform at the depot house, and that the ground there and at the place where plaintiff got off was covered with coal slack, and that it was the same in appearance. The evidence for the defendant tended to show that the train had not stopped, but had only slowed down or slackened its speed, when the red flag was seen, and at the time plaintiff got off. That officers of the road nor employees did not see plaintiff when she got off the train.

At the conclusion of the testimony the defendant asked the court to instruct the jury that, taken in the light most favorable to the plaintiff, the testimony failed to show a state of facts that would entitle her to recover. This the court refused, and the defendant excepted.

Thereupon the court gave, at the request of plaintiff, and over the objections of defendant, the following instructions, to which proper exceptions were saved:

"1.   If the jury believe from the evidence that the plaintiff was a passenger on one of the trains of the defendant at the time and in the manner alleged, and that, before arriving at her destination, the station of Knoxville, said station was announced in the usual way by the porter of the train, and said train was stopped a short distance before arriving at said station, and plaintiff was not warned to keep her seat, nor otherwise advised the stop was only a temporary one, and the plaintiff, under the belief that the train was stopped for the purpose of having her leave it, in the exercise of due and ordinary care, attempted to alight from said train, and was injured by reason of starting said train, then you will find for the plaintiff damages in such sum as under the evidence you may deem her entitled to, provided you find from the evidence that defendant's employees were guilty of negligence in not warning plaintiff to keep her seat, or advising her that the stop was only temporary.

"2.   Negligence is the failure to exercise due and ordinary care, and whether the plaintiff was in exercise of such care, or was guilty of negligence in attempting to alight from car, is to be determined by you from all the evidence and circumstances in the case.

· "3.  If you find for the plaintiff, you should assess her damages at such a sum as you, in the exercise of your sound judgment, believe, from all of the evidence, to be a just and fair compensation for the pain, suffering and inconvenience she has endured and will probably hereafter endure, if any, by reason of the injury of which she complains."

The court gave, at the request of defendant, the following instructions:

"1.  The court charges you that the underlying foundation of this action is the charge of negligence on the part of the defendant named in the plaintiff's complaint; and, unless there was negligence on the part of the defendant which directly caused the injury of which the plaintiff complains, she cannot recover in this case.

"2.  The court charges you that carriers of passengers are liable for negligence, but are not insurers of the safety of their passengers.  They are required to exercise a great degree of care and diligence in conducting their passengers.  It is their duty to provide safe and convenient means of entrance to and departure from the cars, and to establish proper rules for the safe running of their trains.  But, while these duties rest upon a carrier, it is the duty of the passenger to exercise ordinary care and prudence in taking care of himself and avoiding injury; and, although a carrier may be guilty of negligence, still, if the passenger by his own misconduct in failing to exercise ordinary prudence contributes to the injury, he cannot recover.

"3.  The court charges you that when a passenger takes passage upon a railroad train there is an implied contract that he will and does assent to all the company's reasonable rules and regulations for entering, occupying and leaving their cars, and, if an injury befall him by reason of his disregarding the regulations which were necessary to conduct of the business, the company is not liable in damages, even though the negligence of its servants concurred with his own negligence in causing the mischief.

"4.  One who is injured by the negligence of another cannot recover compensation for the injury if he, by his own ordinary negligence or willful wrong, materially contributes to produce the injury of which he complains; so that, but for his own concurring fault, the injury would not have happened to him."

The court gave several other instructions asked for by the appellant, and refused several asked for by it.

*Dodge & Johnson* and *Oscar L. Miles,* for appellant.

Appellee is barred by contributory negligence. 29 Ind. 82; 3 Am. & Eng. R. Cas. (N. S.), 323; 40 Ark. 322; 46 Ark. 533; 536. Appellee had no right to alight when she did. 164 Pa. St. 198; 2 Am. & Eng. R. Cas. (N. S.) 292; 152 Ill. 229; 88 Cal. 91; 82 Mass. 506; 47 Ill App. 353; 51 Mich. 236; 2 Am. & Eng. R. Cas. (N. S.) 380. Passengers on railways assume the risk of the ordinary jerks incident to the movement of trains. Elliott, Railroads, §§ 1631, 1589; 21 Am. & Eng. R. Cas. (N. S.), 380; 56 N. W. 780.

*McKinnon & Patterson* and *Murphy & Mehaffey,* for appellee.

Appellee had a right, when the name of her station was called and the train stopped, to endeavor to get off, unless the circumstances and indications were such as to render it manifest that the train had not reached the proper and usual place. 7 L. R. A. 323, *Cf.* L. R. 6 Q. B. 377; 38 N. J. L. 133; 71 N. Y. 489; 51 Mich. 236. Appellee was not negligent. Ray, Neg. Imp. Duties, 140; 134 Ill. 46; 88 Pa. St. 327; 44 Ark. 322.

HUGHES, J., (after stating the facts.) While we do not say that, as an abstract proposition of law, we approve all that is said in the first instruction, yet, under the circumstances of this case, we find no prejudicial error in it. There was no reversible error in refusing those that were refused.

It seems that the plaintiff, when the whistle sounded for Knoxville, the station, and the porter called out "Knoxville," had reason to believe that it was a warning to passengers that the train was approaching the station, Knoxville, and would soon stop there. We do not think there was negligence in her obeying the warning, and getting ready to alight when the train stopped. There is evidence to warrant the jury in finding that the train did come to a standstill or stop, and that the plaintiff was justified in believing it had stopped for passengers to alight, and that there was no negligence in her getting off where and when she did. The appearances, where she got off, were the same as opposite the depot building, except that the small building itself was not just opposite where she got off. There was, however, a building opposite where she got off which might have indicated to her that the train had entered the little town and stopped for the depot.

No information was given to the plaintiff that the stop was only in answer to the red flag, and not for the depot, and to correct the reasonable impression made on her mind by the circumstances that the train was stopping at the depot, and that the whistle and announcement "Knoxville" was invitation for passengers for Knoxville to get ready and get off when the train stopped very soon thereafter.

It is not shown that the appellee knew anything about emergency stops or red flag signals. The train men did understand them. They knew the appellee was a passenger for Knoxville. We think it was the duty of the train men under the circumstances to give the appellee warning that the stop was not for the station, and that there was a negligent failure to do so, for which the railroad company is liable. Railroad companies are bound to use in behalf of passengers and for their safety the highest degree of care. There is nothing to show that the proper warning might not have been given the appellee. We think that in this case it was the duty of the employees of the railroad to give it.

"We deduce that when the name of the station is called, and soon thereafter the train is brought to a standstill, a passenger may reasonably conclude that it has stopped at the station, and endeavor to get off, unless the circumstances and indications are such as to render it manifest that the train has not reached the proper and usual landing place." *Smith* v. *Georgia Pac. R. Co.,* 7 L. R. A. (Ala.) 323; *Memphis & L. R. R. Co.* v. *Stringfellow,* 44 Ark. 330. The accident in the first-cited case occurred in the night time, but the principle applies here.

No contention is made that the damages were excessive, though the motion for new trial alleges that they were, yet in the brief this seems to be abandoned. The injury was a severe, painful and permanent one.

The judgment is affirmed.

BUNN, C. J., and BATTLE, J., dissent.