St. Louis, Iron Mountain & Southern Railway Company

v. Glossup.

Opinion delivered November 16, 1908.

1. Carriers—calling station prematurely — negligence. — Where a train was stopped at night on a bridge just before a station was reached, but after the station had been announced, and a passenger, thinking that the station was reached, attempted to alight and was injured, a finding that the railroad company was negligent will be sustained. (Page 228.)

2. Same—passenger alighting before reaching destination.—A passenger is not compelled to remain aboard the train until he reaches his destination, but when a station is announced in such a way as would amount to an invitation to other passengers for that station to debark, he, too, relying upon the implied assurance of safety in alighting, may leave the train for refreshment, exercise or other matters of convenience or necessity, provided he exercises due care in doing so. (Page 228.)

3. Instructions—request.—One who desires more specific instructions should ask for them. (Page 229.)

4. Evidence—proof of life expectancy.—The introduction of mortuary tables is not the only method of proving life expectancy; the question may be submitted to the jury upon testimony showing the age, health, habits, physical condition, etc., of the individual, so that the jury may estimate the probable duration of life. (Page 229.)

5. Damages—personal injuries—excessiveness.—A verdict of $8,000 for personal injuries of a painful and permanent nature, which seriously impaired plaintiff's earning capacity for life and disfigured him in person, was not excessive. (Page 229.)

Appeal from Drew Circuit Court; *Henry W. Wells,* Judge; affirmed.

*T. M. Mehaffy* and *J. E. Williams,* for appellant.

1. All the circumstances point to the fact that the train had not reached the station, and under the circumstances appellee could not reasonably conclude that it had done so. 70 Ark. 264; 75 Ark. 165. And appellant could not be held responsible where the appellee, as the facts and circumstances show, failed to use the ordinary sense of sight. 7 L. R. A. 323; 12 Am. & Eng. R. Cas. 165.

2. Appellee was not a passenger for this station or destination, and if he undertook to alight it was his duty to know that he was alighting in a safe place. "Where a passenger enters a railway train and pays the regular fare to be transported from one station to another, his contract does not obligate the corporation to furnish him with safe egress and ingress at any intermediate station." 11 S. W. 326; 3 Am. & Eng. R. Cas. 463; 58 Me. 184; 10 Allen 387.

3. While a passenger has the right, for convenience or necessity, to go into another car, yet, if he assumes to alight from the car for that purpose, he does so at his own risk, and espe-

cially so if he alights from a car for that purpose that is not at a station.   51 Mich. 236; 47 Am. Rep. 566.

4. The court's instruction as to the measure of damages is erroneous in assuming that the duration of appellee's injury would be for life—in assuming facts in dispute as proved.   66 Ark. 506; 74 Ark. 563; 71 Ark. 38.   There was nothing in the evidence to show what the rest of his natural life would be. His life expectancy was not proved.   It was also error, in this instruction, to tell the jury to assess his damages "in such sum as will compensate him" for the different items therein enumerated.   15 S. W. 504.

5. The damages assessed was excessive.   64 Tex. 463; 19 Barb. (N. Y.) 461.

*R. W. Wilson* and *Joe T. Robinson,* for appellee.

1. There is no error in the first instruction given by the court of which complaint is made.   Other instructions given placed upon appellee the burden of showing that he had properly used his sense of sight and hearing.   Moreover, a general objection is not sufficient.   The court's attention should have been called specifically to any defect in the instruction.

2. The relation of passenger is not severed by the passenger's temporarily leaving the train at intermediate stations for business or other reasonable purposes.   148 Mass. 216; 88 Ill. 608; 73 N. Y. 606; 29 Fed. 268; 8 Ore. 60; 113 N. Y. 365; 1 Fetter on Car. Pass. § 234; 2 Hutchinson on Car, § § 1012, 1165, 3 Thompson on Neg. § 2659; 19 Tex. Civ. App. 440; 23 *id* 415; 88 Fed. 455.

3. In arriving at the expectancy of life, it is admissible to introduce life tables, but they are not absolutely essential. The jury may make their own estimate of probable life from other evidence before them pertinent to the issue.   4 Elliott on Railroads § 1813 and cases cited.

4. The verdict is not excessive.   The injury is shown to be permanent, the pain very severe and of long duration, the resulting deformity marked, and his disability from labor probably lifelong.   The amount of damages being exclusively within the province of the jury, their finding will not be disturbed unless so manifestly excessive as to indicate passion or

prejudice, or unless shocking to a fair sense of justice. 56 Ark. 594; 53 N. Y. 625; 11 S. W. 333; 38 Ia. 592; 64 Miss. 584; 18 S. E. 278; 79 Ill. App. 632.

McCULLOCH, J. Appellee took passage at Dermott, Arkansas, on one of appellant's trains on the Warren branch, bound for Monticello, Arkansas, and sues to recover compensation for personal injuries alleged to have been received on account of the negligence of appellant's servants in charge of the train. The train left Dermott about six o'clock in the evening on November 15, 1906, and the coaches were crowded with passengers who had attended the circus in Dermott that day. Just before the train reached Baxter, a station about four miles distant from Dermott, the conductor, in order to gain time for the auditor to collect all the fares before stopping at Baxter, caused the train to be halted on a bridge or trestle across Bayou Bartholomew, and appellee, who was standing on the platform of the rear coach, stepped off, receiving the severe injuries complained of in this action. He alleged in his complaint, and adduced testimony tending to prove, that the rear coach which he entered was so overcrowded that he could not obtain a seat, and that it was unlighted; that one of appellant's employees called the station of Baxter, and the train immediately came to a stop; that he thought the stop was made for the station, and, being unable to get through the coach, he attempted to alight in order to go forward to the next coach to procure a seat. He testified that when he started to alight it was dark, and he looked about but could see nothing to indicate that the train had not stopped at the station.

The evidence was sufficient to justify a finding of negligence on the part of appellant's servants in calling the station prematurely, thus inducing appellee to attempt to alight, and that he exercised due care in attempting to alight. Such a state of facts rendered appellant responsible for any injury which resulted. *Memphis & Little Rock Railroad Co.* v. *Stringfellow,* 44 Ark. 322; *Railway Company* v. *Johnson,* 59 Ark. 122; *St. Louis, Iron M. & S. Ry. Co.* v. *Farr,* 70 Ark. 264; *Davis* v. *K. C. So. Ry. Co.,* 75 Ark. 165.

It is insisted, however, that a different rule should prevail when a passenger attempts to alight from the train at a station

which is not his destination, in reliance on a premature announcement of the station. We do not think this is a sound distinction. Appellant did not cease to be a passenger by alighting or attempting to alight from the train before he reached the end of his journey. *Arkansas Central Railroad* v. *Bennett,* 82 Ark. 393.; *Parsons* v. *Railroad Co.,* 113 N. Y. 355; *Dodge* v. *Boston & Bangor Steamship Co.,* 148 Mass. 207; 2 Hutchinson on Carriers, § 1012.

A passenger is not compelled to continuously remain aboard the train until he reaches his destination. He may, at regular stopping places, leave the train for refreshment, exercise or other matters of convenience or necessity, provided he exercises proper care; and he does not change his status as passenger by doing so. ·And when a station is announced in such a way as would amount to an invitation to other passengers bound for that station to debark, he too may accept the invitation and rely upon the implied assurance of safety in alighting.

The instructions given by the court at the instance of appellee are questioned on the alleged ground that they omit the idea that, before the announcement of the station can be accepted as an invitation to alight when the train comes to a stop, there must be an absence of circumstances indicating that the station has not been reached. We do not think the instructions are open to this criticism. But, if they are, it was the duty of appellant to ask for instructions more specific.

The evidence tended to show that appellee's injuries were of a permanent nature. No effort was made to prove his expectancy of life by the introduction of mortuary tables, and it is insisted that the court erred in submitting to the jury the question of compensation for permanent injuries. Introduction of mortuary tables is not the only method of proving life expectancy. The question may be submitted to the jury upon testimony showing the age, health, habits, physical condition, etc., of the individual, so that the jury may estimate the probable duration of life. *Kansas City Southern Railway Co.* v. *Morris,* 80 Ark. 528; 4 Elliott on Railroads, § 1813.

The amount of the verdict is questioned as being excessive. The jury assessed the amount of the damage at $8,000, and we are of the opinion that it is warranted by the evidence. The

testimony tends to establish a painful injury and a permanent one, which not only seriously impairs appellee's earning capacity for life, but also disfigured him in person.

Judgment affirmed.