ARKANSAS CENTRAL RAILROAD COMPANY v. BENNETT.

Opinion delivered March 25, 1907.

1. CONTINUANCE—AMENDMENT OF COMPLAINT.—Where the trial court permitted the plaintiff to amend his complaint so as to make a new charge of negligence, error in refusing a continuance until defendant could secure the presence of witnesses to meet the amendment was not prejudicial where no evidence was introduced to establish the new charge. (Page 397.)

2. CARRIER—NEGLIGENCE IN STARTING TRAIN—INSTRUCTION.—An instruction, in a suit against a railroad company for injuries received by a passenger in attempting to board a moving train, to the effect that if the railroad company was negligent in encouraging plaintiff to attempt to board its train while in motion, and while he was attempting to do so caused its train by a sudden jerk to throw plaintiff or cause him to fall down and crush his arm with its train, plaintiff would be entitled to recover unless he was guilty of contributory negligence, was not prejudicial to the railroad company, as it placed the burden on the plaintiff of showing that the railroad company was negligent both in encouraging plaintiff to board a moving train and in causing the train to be moved with a sudden jerk while plaintiff was attempting to board it, when proof of negligence in either respect would have been sufficient ground for recovery. (Page 398.)

3. SAME—CHARACTER OF PASSENGER—WHEN NOT LOST.—A passenger on a freight train who debarks therefrom while the train is switching at a station in order to speak to an acquaintance, intending to get aboard before the train starts, does not lose his character as a passenger. (Page 399.)

4. SAME—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.—Evidence that a railroad conductor, knowing that plaintiff was a passenger and that he

desired to board the train, gave the signal for the train to start before plaintiff could reach the passenger coach, and that plaintiff in attempting to get on the moving train fell and was injured, was sufficient to sustain a finding of negligence on the part of the railroad company. (Page 399.)

Appeal from Franklin Circuit Court; *Jeptha H. Evans,* Judge; affirmed.

*Oscar L. Miles* and *Lovick P. Miles,* for appellant.

1. After permitting the plaintiff to amend his complaint so as to set up another cause of action, the court erred in refusing to postpone or continue the trial. Under the original complaint, appellant had no reason to anticipate that the testimony of the engineer and fireman would be required. Hence it was not at fault in not having present these witnesses whose testimony would be necessary to meet the new issue raised by the amendment. 67 Ark. 142; 71 Ark. 197; 55 Ark. 568; 75 Ark. 465; 59 Ark. 165; 84 N. Y. 420; 1 Enc. Pl. & Pr. 547, 557; 51 Am. St. Rep. 414, notes.

2. The court should have directed a verdict for the defendant. If the car was moving so slowly that the conductor, by the exercise of a reasonable foresight, could not anticipate that appellee would be injured in attempting to board the train, no duty rested on the conductor to make an effort to avoid such consequences as resulted. 75 Ark. 211; 123 N. Y. 391; 56 Ark. 594.

*Sam R. Chew,* for appellee.

1. There was no prejudicial error in permitting the amendment and denying the motion to postpone or continue. The complaint as originally drawn was sufficient to put the defendant on notice that the movement and operation of the train would be relied upon. Moreover, the motion did not comply with the statute. Kirby's Dig. § § 6173, 6145. This court will not interfere with the trial court's discretion with reference to continuance, unless it affirmatively appears that there has been a flagrant abuse of discretion, amounting to a denial of justice. 61 Ark. 94; 2 Ark. 42; 24 Ark. 599; 9 Ark. 108; 8 Ark. 119; 54 Ark. 243.

2. In alighting from the car at a regular station, other than the terminus of his journey, appellee did not lose his character as a passenger. 113 N. Y. 355; 90 N. W. 649; 148 Mass. 207; 2 L. R. A. 83 and notes. Unquestionably it was negligence on the part of the conductor to start the train when he knew that appellee had started to reenter the car while it was yet standing still; and, as to any contributory negligence on the part of appellee, that question is settled by the verdict. 8 Railroad Rep. 911; 71 S. W. 630; 45 S. W. 496; 47 S. W. 872; 57 S. W. 465; 37 Ark. 519; 46 Ark. 182.

RIDDICK, J. This is an action by A. S. Bennett against the Arkansas Central Railroad Company to recover damages for an injury caused by his falling from the steps of a car and sustaining injuries which necessitated the amputation of an arm. Bennett alleged in his complaint that he had bought a ticket and taken passage over the road of defendant from Paris, Arkansas, Ft. Smith. The train was a mixed train, composed of freight and passenger cars. When the train stopped at Lavaca, a station between the two points named, and while the crew of the train were switching cars, plaintiff alighted from the train and engaged in conversation with some acquaintances he met at the depot. The conductor of the train was present. He was acquainted with plaintiff, and knew that he was a passenger. While the conductor and plaintiff were standing on the platform, the conductor called, "All aboard." The plaintiff then asked him if the coaches would stop at the platform. The conductor replied no, but said that they would go through slow. Bennett at once started to get on the coach, but the conductor gave the signal to start, and before the plaintiff reached the end of the platform the train had commenced to move, and when he attempted to board it was moving at the rate of two or three miles an hour. As he put his foot on the step, the motion of the train caused his foot to slip, and he fell from the platform, and his right arm was crushed by one of the wheels of the coach. The complaint alleged that the injury was caused by the negligence of the conductor; that the conductor, seeing and knowing that plaintiff was approaching the coach for the purpose of entering it while it was standing still, carelessly, negligently and willfully caused the train to move and start off just at the time when

plaintiff was near the coach; that the conductor followed immediately behind plaintiff; that because the train was moving slowly and because the conductor was present and knew that plaintiff intended to board the train the plaintiff felt encouraged and invited by the conductor to make the attempt. He did so and was injured.

On the trial Bennett testified in his own behalf and detailed the facts stated above. As to the facts immediately preceding the accident, he said: "I saw they were ready to start, and I asked conductor Harnest if they were going to stop when they got to the platform. He said no or something of that kind, and I said I will get on before the train starts, and I started at once, but before I got off the platform the train had started to move, and of course I thought it was safer for me to get on there, for it was not so high. I waited until the end of the coach pulled up to the platform, and I caught hold of the car with both hands and got my right foot on the step and slipped, and that jerked my left hand from the bar." He was then asked by his counsel, "How came your foot to slip?" and answered: "The car felt to me like it jerked a little; like it had a little more steam." Thereupon counsel for defendant objected to that part of the testimony as to the jerk in the movement of the train because there was no allegation in the complaint upon which to base it. The court overruled the objection, but counsel for plaintiff thereupon asked permission to amend his complaint so as to show "that at the time plaintiff took hold of the hand rails on the coach, the coach was suddenly and violently jerked forward." The court permitted this amendment to be made, to which ruling of the court the defendant objected and excepted. The defendant thereupon moved the court to withdraw the case from the jury and either postpone the hearing to a later day of the term or continue the same for the term to enable the defendant to secure the presence of witnesses who could testify as to how the train was handled at the time referred to by plaintiff. Counsel for defendant stated to the court that these witnesses were in Ft. Smith or Paris, Ark., and not in attendance upon the court, and that defendant needed additional time to prepare its defense to the allegation of sudden jerking in the movement of the train. But the court overruled the motion, stating that he considered

the complaint as originally drawn sufficient to put defendant on notice that the movement or operation of the train would be relied upon by the plaintiff, and to this ruling of the court the defendant duly excepted.

It is urged with much force that this amendment made a new charge of negligence against the defendant, and brought a new issue in the case of which the defendant had no previous notice, and that the court erred in refusing to postpone or continue the case until the defendant had reasonable time to procure its witnesses and prepare its defense against this charge. It seems to us that this amendment does make a new charge of negligence not previously embraced in the complaint. As originally drawn, the charge was that the conductor, knowing that plaintiff was about to board the train, negligently started the train before he could do so, and thus invited and exposed him to the risk of boarding a moving train. In other words, the plaintiff in the original complaint based his right to recover upon the negligence of the conductor, with which the engineer had nothing to do. In addition to this, the amended complaint charged that as plaintiff took hold of the hand rails on the coach of the moving train "the said coach was suddenly and violently jerked forward." It is not alleged that the signal of the conductor for the train to start caused this sudden and violent jerk, and the inference is that it was the fault of the engineer. If there had been any evidence to support this amendment, it would have been a serious question as to whether the defendant had not been prejudiced by the refusal of the court to give time to meet this new charge in the complaint. But, though the amendment was permitted, we see nothing in the evidence tending to show any violent or sudden jerk of the train or any evidence that would not have been entirely proper under the complaint before the amendment. The only evidence bearing on this point was the statement of the plaintiff that as he put his right foot on the step "the car felt  *  *  *  like it jerked a little, like it had a little more steam." Now, this was a mixed passenger and freight train. It would be, of course, impossible to start any train without turning on the steam, and next to impossible to start a train of that kind without some little jerking as it got under way. That a little steam was added, and that

the speed of the train increased or jerked a little, does not show any negligence on the part of the engineer, but only that he was getting his train under way as directed by the signal of the conductor. It has often been held that it is impracticable to operate a freight train without some jerking and jolting. *Krumm v St. Louis, I. M. & S. Ry. Co.,* 71 Ark. 590; Hutchinson on Carriers, 3d Ed., 1217. Such ordinary jerks and jolts are incident to the operation of such trains, and do not show negligence. There was no occasion for the defendant to have the engineer and fireman to rebut this evidence unless it desired to show that the train did not move at all. But it was alleged in the original complaint that the conductor negligently ordered the train to start without allowing plaintiff time to get aboard. The evidence of plaintiff was proper under the original complaint. The presiding judge so held, but it seems that counsel for plaintiff became alarmed at the objection made by counsel for defendant to the admission of this evidence. He thereupon procured leave to amend the complaint, and in doing so put in the allegation that as plaintiff caught hold of the hand rails of the coach it "was suddenly and violently jerked forward," which went far beyond anything shown by the evidence. But this allegation did not injure defendant, so long as there was no evidence to sustain it. We therefore do not see that any prejudice resulted from the failure of the court to postpone the trial.

It is also said that the presiding judge erred in giving the third instruction, which is as follows:

"The gravaman of the charge in this case against the defendant is that it was negligent in encouraging plaintiff to attempt to board its train while in motion, and, while he was attempting to do so, to cause its train by a sudden jerk to throw this plaintiff, or cause him to fall down and crush his arm with its train. If you find this to be true by a preponderance of the evidence, and do not find from a preponderance of the evidence that plaintiff was guilty of negligence contributing to his own injury, you will find for the plaintiff."

Now, this instruction does refer to the question of a sudden jerk, but in doing so it only puts an additional burden on the plaintiff, and does not harm the defendant. If the conductor negligently started the train, and thus encouraged and caused

the plaintiff to attempt to board a moving train, and while doing so, and while in the exercise of due care on his part, plaintiff's foot slipped, so that he was thrown under the car and injured, then the company was liable, whether there was a sudden jerk or not.  If defendant had shown that there was no sudden jerk, it would not in such a case have avoided liability.  The statement in the instruction that a sudden jerk must be shown, as before stated, was erroneous, but the effect of it was not to harm the defendant but to put an undue burden on the plaintiff.  If the instruction had told the jury that, even though there was no negligence in inviting plaintiff to board a moving train, yet, if the train was negligently and violently jerked forward while he was attempting to board it, they should find for plaintiff, then a different question would have been presented, for that would have permitted a recovery on the ground of negligence in making a sudden jerk alone, which was not alleged in the original complaint.  But the instructions cover all the points required to make out the case under the original complaint in addition to the sudden jerk, and we do not see that any prejudice could have resulted.  This disposes of the only doubtful points in the case.  Other questions are discussed by counsel, but we think the instructions given by the court, when considered as a whole, fairly covered the law of the case, and that no error was committed in giving or refusing instructions.

. The evidence was sufficient to sustain the finding of the jury that the conductor was guilty of negligence in giving the signal to start the train when he knew that plaintiff was preparing to get aboard of it.  The plaintiff did not lose his character as a passenger by leaving the train to talk with an acquaintance during the time that cars were being switched.  When he saw that the switching was done and the train about ready to start, he asked the conductor if it would pull up and stop at the depot. On being told by the conductor that it would not stop but would go through slow, plaintiff replied that he would get on before it started, and went toward the coach.  But the conductor called "All aboard" and gave the signal to start immediately afterwards before plaintiff reached the coach.  Plaintiff was sixty years of age, and he fell in attempting to get on the moving train, and was injured.  The conductor, being present

and knowing that plaintiff was a passenger and that he desired to board the train, should have allowed a reasonable time after calling "All aboard" for him to get on the train before giving the signal to start. It is true that the train was moving slowly, but plaintiff had notified the conductor that he wished to get on before it started. By giving the signal to start immediately after calling "All aboard," he subjected plaintiff to the risk of boarding a moving train, which resulted in his injury. The question as to whether in doing so the conductor was guilty of negligence was clearly submitted to the jury by the seventh instruction* asked by defendant, as well as by the instruction copied above. The circumstances justified the finding that the injury was due to the negligence of the conductor as alleged. *State* v. *Grand Trunk Ry. Co.*, 58 Me. 176; *Parsons* v. *New York Central & Hudson River Ry. Co.*, 113 N. Y. 355; *Hatch* v. *Philadelphia & R. Ry. Co.*, 61 Atl. Rep. 480; *Chicago, R. I. & P. Ry. Co.* v. *Sattler*, 90 N. W. Rep. 649.

Finding no error, the judgment is affirmed.

---

* "7. If you should find that defendant's conductor invited plaintiff to board the train while in motion, then you must determine whether he was negligent in so inviting the plaintiff, and in determining whether the defendant's conductor was negligent in inviting the plaintiff to board the train, if you find that he did invite the plaintiff, the conduct of the conductor must be viewed in the light of his experience and the danger to be apprehended by a reasonably prudent man with the experience of said conductor when confronted with his situation and attending circumstances as they existed at the time and were known to said conductor."