VERYL PRESTON, Respondent, *v.* ÆTNA INSURANCE COMPANY, Appellant.

INSURANCE (FIRE) — POLICY INSURING AUTOMOBILE — CLAUSE EXCEPT-
ING "LOSS OR DAMAGE CAUSED BY FIRE ORIGINATING WITHIN THE
VEHICLE" — MEANING AND EFFECT THEREOF — LOSS NOT COVERED BY
POLICY. Where a policy insuring an automobile contained a provision
that the policy should not cover "loss or damage caused by fire originating
within the vehicle," the fair and natural import and meaning thereof
excluded loss by fire, danger of which was inherent in the use or opera-
tion of the automobile itself without the intervention of any extrinsic
cause or agency. When, therefore, the automobile was damaged by fire
originating in an explosion of gasolene, which, owing to the partial over-
turning of the automobile in a ditch containing water, ran out of its tank
upon the water, and its vapor, coming into contact with lighted lamps
attached to the automobile, was ignited and exploded, causing the fire and
the resulting damage, it must be held that the fire originated within the
vehicle, and that the policy did not cover the loss.

*Preston* v. *Ætna Ins. Co.*, 118 App. Div. 784, reversed.

(Argued May 29, 1908; decided October 13, 1908.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered April
5, 1907, reversing a judgment in favor of defendant entered
upon the report of a referee and granting a new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Edgar J. Nathan* for appellant. The policy must be rea-
sonably construed; there is no ambiguity or uncertainty
in the language and the rule that a policy should be inter-
preted strictly against the insurer is inapplicable. (*Nelson* v.
*T. Ins. Co.*, 181 N. Y. 472; *Allen* v. *G. A. Ins. Co.*, 123
N. Y. 6; *Peabody* v. *Satterlee*, 166 N. Y. 174; *I. F. Ins.
Co.* v. *Coos Co.*, 151 U. S. 452; *D. Ins. Co.* v. *Greer*, 120 Fed.
Rep. 916; *Foot* v. *Ætna L. Ins. Co.*, 61 N. Y. 571; *Yooh*
v. *H. M. Ins. Co.*, 111 Cal. 503; *Michael* v. *P. Ins. Co.*, 171
N. Y. 25; *Devitt* v. *P. W. Ins. Co.*, 61 App. Div. 390; 173
N. Y. 17; *Griffey* v. *N. Y. C. Ins. Co.*, 100 N. Y. 417.)

The fire originated within the vehicle and, therefore, defendant is not liable. (*Nelson* v. *T. Ins. Co.*, 181 N. Y. 472; *Pettit* v. *May*, 34 Wis. 666; *Baddeley* v. *Gingell*, 17 L. J. Exch. 63.)

*Graham Sumner* and *Philip G. Bartlett* for respondent. The clause in the policy of insurance excepting the risk of fires originating within the vehicle must be construed strictly against the appellant. (*Rickerson* v. *H. F. Ins. Co.*, 149 N. Y. 307; *Griffey* v. *N. Y. C. Ins. Co.*, 100 N. Y. 417.) The fire which caused the plaintiff's loss was not a fire originating within the vehicle within the meaning of the policy of insurance. (*Schoonmaker* v. *Hoyt*, 148 N. Y. 425; *Dady* v. *O'Rourke*, 172 N. Y. 447; *Hustace* v. *P. Ins. Co.*, 175 N. Y. 292; *Nelson* v. *T. Ins. Co.*, 181 N. Y. 472.)

CULLEN, Ch. J. This action is brought on a fire insurance policy to recover for the damage caused to an automobile by fire. The policy contained this provision : " It is understood and agreed that this policy does not cover loss or damage caused by fire originating within the vehicle." On a dark night in July, 1902, the automobile insured, which was propelled by the explosion of gasolene vapor, while going from Pleasure Bay to Monmouth, New Jersey, ran off the road into a ditch filled with water to the depth of a man's knee. At the time of the occurrence there were in the vehicle a chauffeur and three other men. The automobile lay at an angle of forty degrees with the bed of the road. Finding it impossible to extricate the machine from the ditch the three men left for assistance, and almost immediately after heard the noise of an explosion, when running to the place of the accident they found the automobile in flames and the chauffeur lying on the ground across the ditch, with his clothes torn and his arms and hands bare. The chauffeur died before the trial of this action, so the origin of the fire can be determined only from the circumstances narrated by the other persons. At the time of the accident two kerosene lamps on the dash-

board of the vehicle were lighted. It is assumed by both parties that on account of the slanting position in which the vehicle stood the gasolene ran out of the tank, covered the surface of the water, and its vapor coming in contact with the lighted lamps took fire and caused the explosion. This theory is in harmony with the statements made in plaintiff's proof of loss, to wit, "said fire originating as follows: On road from Pleasure Bay to Monmouth Beach. Caused by extinguishing lamp." The referee found as a fact that the loss and damage originated within the vehicle and awarded judgment to the defendant. This judgment was reversed by the Appellate Division, the order of which is silent as to the grounds of the reversal. It is, therefore, presumed to have been on the law alone (Code of Civil Procedure, § 1338), the facts found by the referee not being disturbed provided there was any evidence to support them. Therefore, the question before this court is whether a fire occurring in the manner described falls within the exception of the policy as a "fire originating within the vehicle."

We cannot accept the view entertained by the majority of the Appellate Division. Doubtless the general rule is, as often stated, that where an insurance policy is so drawn as to be ambiguous or require interpretation, that interpretation will be adopted which is most favorable to the insured. (*Rickerson* v. *Hartford Fire Ins. Co.*, 149 N. Y. 307; *Michael* v. *Prussian Nat. Ins. Co.*, 171 N. Y. 25.) But the rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense. (*Imperial Fire Ins. Co.* v. *Coos Co.*, 151 U. S. 452; *Nelson* v. *Traders' Ins. Co.*, 181 N. Y. 472.) That the lamps were part of the automobile so that the policy would have covered their loss had the fire been caused by other than the excepted risk seems reasonably clear. That the gasolene vapor must have penetrated within the lamp to have ignited is also clear. Therefore, within

the letter of the policy the fire in this case originated within the vehicle itself and was an excepted risk. We do not care, however, to stand on the proposition that construing the policy literally, this fire fell within the exception, but on the broader ground that by a fair interpretation of the policy it was intended to exclude risks of this character. The motive power used in the automobile, volatile and inflammable in the highest degree, was a constant source of danger by fire. Fire might happen from many circumstances, some of which it was possible to foresee, others which it was not possible to foresee. It might be caused from some defect in the electric apparatus or in the valves controlling the flow from the tank into the motor setting fire to the whole store of gasolene. If the vehicle was run at a high speed the machinery might become so heated as to cause fire and, as already suggested, the fire might be caused in many other ways which could not be anticipated. The fair and natural import of the policy was to exclude loss by fire, danger of which was inherent in the use or operation of the automobile itself without the intervention of any extrinsic cause or agency. If an incendiary, desiring to destroy the automobile, should throw a lighted match into the tank the fire would, under a literal reading of the policy and under the position assumed by the respondent's counsel, originate " within the vehicle," but in our judgment such a loss would not fall within the spirit or fair interpretation of the exception, but, on the contrary, be covered by the policy. In such a case it would be the independent act of a third party that caused the fire. It is true that by reason of the presence of the gasolene an automobile would, possibly, at all times, be more inflammable and subject to greater injury by fire than other vehicles. Such risk was, doubtless, paid for by the premium exacted and was covered by the policy. What the policy intended to except was fire developed by or originating in the use of the automobile as distinguished from fire occasioned by external causes. In other words " within " in this policy is used as the antithesis of " extrinsic " or " without," not as the synonym

of "interior." The question is one that does not admit of extended elaboration. We can only say that in our judgment the policy did not cover the loss in this case.

The order of the Appellate Division should be reversed and the judgment entered upon the report of the referee affirmed, with costs in both courts.

VANN, J. (dissenting). The decision of this appeal turns on the meaning of the words "fire originating within the vehicle," which form part of an exception that is claimed to release the defendant from the obligation of its general promise to insure "against all direct loss or damage by fire." The exception from the promise is not a part of the printed policy, but was written in and is peculiarly the language of the insurer. If the meaning of the exception is in doubt, the law holds the company responsible "because it prepared and executed the contract, and the language used is wholly its own." (*Rickerson* v. *Hartford Fire Ins. Co.*, 149 N. Y. 307, 313.) The learned Appellate Division gave the words in question one meaning, while the referee and one of the justices below gave them another. We also differ with no uncertain divergence of views as to what they mean, and can it be said under these circumstance, with propriety or truth, that the meaning of the company is expressed so clearly as to exempt it from the application of the rule that the author of a serious doubt in a written instrument must bear the burden thereof?

Where did the fire originate and what was the direct cause thereof? The gasolene was a mere potentiality, the same as a bundle of pine shavings or a can of gunpowder might have been. It did not cause the fire, for there is no claim of spontaneous combustion. It was highly inflammable, but it was not the first material that caught fire. The fire did not originate in the gasolene. It originated in an explosive vapor that came partly but not wholly from the gasolene, owing to rapid evaporation after it had escaped from the vehicle. The gasolene in the form of a liquid oil flowed out of the inverted

tank on the ground or water beneath. It was then no longer within but wholly without the vehicle and it was not then on fire. Contact with the air and combination therewith at once turned it into a vapor or gas, that is, "a compound or mixture capable of a rapid chemical reaction," known as an explosion. It was not until after the gasolene was resting on the surface of the earth, wholly free from the vehicle, that the gas came into existence. As a gas it was never inside of the vehicle. It was a new substance, composed of gasolene and air. It was created by the action of the outside air upon the gasolene after it was also outside. That action took place without the vehicle and the product of evaporation sprang into existence without the vehicle. It was never within the vehicle, for it was not composed wholly of gasolene. A new element was added to the gasolene after its escape and the oil and air compounded, not simply combined, was a new substance. This new substance, thus brought into existence without the vehicle, caught fire, doubtless from contact with the flame of a kerosene lamp. Assuming that the lamp was part of the vehicle, that which first took fire was not a part of it, nor within it. The gas, floating in the air wholly outside of the vehicle, first caught fire and that fire was communicated to the vehicle and destroyed it. The fire, *me judice*, did not originate within the vehicle, any more than if the vehicle had run into a hay stack, the lamp had set fire to the hay and the burning hay had set the vehicle on fire; or, to use another illustration, if the vehicle had overturned a storage tank and the gas arising from the oil as it flowed on the ground had been ignited by the lamp and fire had thus been communicated to the vehicle itself.

The purpose of the exception from general liability imposed on the defendant by the policy, as I gather the meaning from the words used, was to exempt the insurer when the fire was caused by the operation of the machinery, or by defects in the vehicle itself, or by inherent agencies which were a part of the machine and operated wholly within it, with no aid from external causes. Such a fire would owe

its origin wholly to internal conditions, and hence could properly be said to have "originated within the vehicle." The fire in question originated without the vehicle, for it was kindled outside and was burning outside before the vehicle itself caught fire.

I vote for affirmance and judgment absolute against the appellant on its stipulation.

GRAY, HAIGHT, WERNER and WILLARD BARTLETT, JJ., concur with CULLEN, Ch. J.; CHASE, J., concurs with VANN, J.

Order reversed, etc.