CROWN COACH COMPANY *v.* WHITAKER.

4-7582 • 186 S. W. 2d 940

Opinion delivered April 16, 1945.

*Ned Stewart,* for appellant.

*Barney & Quinn,* for appellee.

McFADDIN, J. This is an appeal by a common carrier from a judgment awarding damages because of injuries sustained by a passenger.

On February 2, 1943, Mrs. Whitaker, riding on a ticket from Tulsa, Oklahoma, to New Iberia, Louisiana, reached Texarkana, Texas, at about 9:30 a.m. Central wartime, on a bus of the Crown Coach Company. The weather was inclement and visibility was poor. Mrs. Whitaker was to change at Texarkana, from the bus of the appellant company to a Tri-State bus, to proceed to Shreveport, Louisiana. The Crown Coach Company used as its terminal the station of the Greyhound lines in Texarkana, *Texas,* on the west side of State Line avenue. The station of the Tri-State Bus Company was located in Texarkana, *Arkansas,* on the east side of State Line avenue. Thus the bus stations, although located in different states, are just across the street from each other. Mrs. Whitaker never reached Arkansas; her injuries occurred in the shed of the Greyhound station in Texas.

The Greyhound station has a long shed extending from State Line avenue to the next street to the west. The shed has a concrete floor; it is a wide shed: three busses may be parked abreast. There is a pathway, elevated two or three inches, extending along the south wall

of the shed; and doors open from the elevated pathway to the waiting room and ticket offices. On the north side of the shed there is only a wall. The Crown coach on which Mrs. Whitaker was a passenger did not stop next to the elevated pathway, but stopped next to the north wall. It was shown that this bus station, although operated by the Greyhound lines, was used also by the Missouri Pacific busses and the Arkansas Motor Coaches, in addition to the Crown Coach Company; and that a Greyhound bus was due to arrive about the same time as the Crown coach; and that the Greyhound Company used the elevated pathway on which to discharge its passengers, so that the Crown coach was required to park at the north side of the shed and discharge its passengers on the concrete floorway. The passengers could walk across the floorway to the elevated pathway, and then through the doors into the waiting room and out into the street; or they could walk directly east or west to the nearest street exit without going into the waiting room.

When Mrs. Whitaker arrived in Texarkana she asked the bus driver which way she should go to get to the station of the Tri-State Bus Company, and he told her to "go right across the street." After receiving her hand bag, and bidding goodbye to a fellow passenger, Mrs. Whitaker took one or two steps to go out of the shed, just as she had been directed, when she stumbled over a zipper bag or another obstacle, and fell to the concrete floor, receiving a fracture of the left kneecap.

This suit was filed by Mrs. Whitaker for compensation for her injuries. Mr. Whitaker also sued for loss of companionship, services, and society of his wife because of the injuries that she received. The complaint alleged that it was dark in the shed, and that, due to that condition, Mrs. Whitaker stumbled and fell over some obstacle in the path she had been directed to take by the bus driver. The basis of negligence was the alleged darkness of the shed, the claim that it was a dark and rainy day, and that the shed was not sufficiently lighted. The case was tried to a jury, and resulted in a verdict and judg-

ment for plaintiffs. This appeal presents the following issues.

I. *The Injuries Sustained by Mrs. Whitaker Occurred in the State of Texas, and the Laws of that State Govern as to Liability, and Are Applied in This Case.* St. L., I. M. & S. Ry. Co. v. Brown, 67 Ark. 295, 54 S. W. 865; St. L. & S. F. R. Co. v. Coy, 113 Ark. 265, 168 S. W. 1106; T. & P. Ry. Co. v. Stephens, 192 Ark. 115, 90 S. W. 2d 978; Magnolia Petroleum Co. v. Turner, 188 Ark. 177, 65 S. W. 2d 1; see also 11 Am. Juris. 490, and Leflar on "Conflict of Laws," p. 184. This point seems to be conceded by both sides, but we mention it at the outset because some of the rules of law herein stated would not be followed if this case were governed by the decisions of our state.

II. *The Degree of Care Due by the Carrier to the Passenger.* Of course, Mrs. Whitaker was a passenger at the time of her injury, because she had not left the premises of the carrier. Both sides seemed to concede the general rule stated in 10 C. J. 623: "The relation of carrier and passenger having been constituted continues until the journey, expressly or impliedly contracted for, has been concluded and the passenger has left the carrier's premises, unless the relation is sooner terminated by the voluntary act of the passenger, . . ." (13 C. J. S., "Carrier," § 563, p. 1071.)

While Mrs. Whitaker was still a passenger at the time of the injury, yet she was not within the conveyance; and many courts state that the degree of care owed by the carrier to the passenger who is in the conveyance is greater than the degree of care owed by the carrier to the passenger who is merely on the premises. The trial court gave instruction No. 1 as required by the plaintiff as follows:

"You are instructed that the relation of carrier and passenger existed between the plaintiff, Edna Whitaker, and the defendant, Crown Coach Company, on the morning of February 2, 1943, at the time of the injury complained of in plaintiffs' complaint, and that the defend-

ant then owed to the plaintiff, Edna Whitaker, a high degree of care for her safety, that degree of care being the high degree of care which a prudent and cautious man would reasonably exercise, consistent with the defendant's practical operation and maintenance of its landing premises."

The appellant complains that this instruction is in error, in that it imposes on the carrier a "high degree of care" instead of "ordinary degree of care." In 10 Am. Juris. 189, it is stated:

"Degree of Care Exacted of Carrier.—The authorities are not agreed as to the degree of care properly exacted of a common carrier with respect to the maintenance of its stations and premises. There are some decisions which uphold the view that a carrier need exercise no more than ordinary or reasonable care in that direction. Other decisions hold the carrier to the exercise of the same high degree of care and skill in the maintenance of its stations as is imposed in the operation of its vehicles."

In the case of *St. L., I. M. & S. Ry. Co.* v. *Woods,* 96 Ark. 311, 131 S. W. 869, 33 L. R. A., N. S. 855, the Arkansas Supreme Court followed the "ordinary care" rule; and plaintiff's instruction No. 1 as hereinbefore quoted would be erroneous if we were applying the law of Arkansas.

But, as before stated, we are applying the law of Texas; and our study discloses that Texas follows the "high degree of care" rule; so the instruction is a correct statement of the law of Texas. In *St. L. S. W. Ry. Co.* v. *Gresham,* 106 Tex. 452, 167 S. W. 724, a passenger had slipped on one of the steps of the coach as she was alighting. The Supreme Court of Texas affirmed a judgment for the plaintiff, and said:

"The court correctly stated the measure of diligence which the law requires of passenger carriers; that is, the *high degree* of diligence which would be exercised by very prudent persons under similar circumstances,

*I. & G. N. Ry. Co.* v. *Halloren,* 53 Tex. 46, 37 Am. Rep. 744; *Allen* v. *Galveston City Ry. Co.,* 79 Tex. 631, 15 S. W. 498. The limitation of such diligence to the operation of the cars would be unreasonable and without support in the law.''

The case of *Ft. W. & D. C. Ry. Co.* v. *Brown,* 205 S. W. 378, decided by the Amarillo Court of Civil Appeals is nearest in point to the facts here. In that case the plaintiff was seated in the station as a passenger awaiting the train, and the seat collapsed and the passenger was injured. The Court of Civil Appeals said:

''Complaint is made of the charge of the court which imposed upon the appellant company in the treatment of their passengers awaiting trains in their depots . . . that high degree of care that a very cautious person would have exercised under the same or similar circumstances on the ground that the rule requiring the exercise of that high degree of care as stated applies only to those duties in connection with the actual transportation of the passenger, and that only ordinary care is required in reference to the condition of its stations and premises occupied by passengers preliminary to or upon termination of the actual transportation. There are some authorities which sustain this proposition. C. J., vol. 10, p. 910; 13 C. J. S. ''Carrier,'' § 682, p. 1264. But it seems to be settled by the decisions of this state that the rule of *high degree of care* is applicable in both situations stated.''

In the case of *G. C. & S. F. Ry. Co.* v. *Conley,* 113 Tex. 472, 260 S. W. 361, 32 A. L. R. 1183, the Supreme Court of Texas cited with approval the case of *Ft. Worth & D. C. City Ry. Co.* v. *Brown, supra,* on this point of the degree of care required by a carrier to a passenger. So, without laboring the point further, we consider the instruction No. 1 to be a fair statement of the holdings of the Texas courts on the degree of care. The following Texas cases support this statement: *International & G. N. R. R. Co.* v. *Halloren,* 53 Tex. 46, 37 Am. Rep. 744; *International & G. N. R. R. Co.* v. *Welch,* 86

Tex. 203, 24 S. W. 390, 42 A. S. R. 829; *Wichita Valley R. Co.* v. *Williams,* 116 Tex. 253, 288 S. W. 425; *Gulf, C. & S. F. R. Co.* v. *Conley,* 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183; *Gulf, C. & S. F. R. Co.* v. *Williams* (Com. App.), 268 S. W. 149; *Wisdom* v. *Chicago, R. I. & G. Ry. Co.* (Com. App.), 231 S. W. 344; *St. Louis & S. W. R. Co.* v. *Woodall,* 207 S. W. 84; *Scott* v. *Texas Elec. Ry. Co.* (Com. App.), 32 S. W. 2d 641.

In reaching this conclusion we also dispose of appellants' contention that "landing premises" (the last two words in the instruction) did not comprehend or cover the entire shed. The duty of the carrier extended to the *premises,* whether it be that part provided for discharge of passengers from the conveyance or exit from the station. In 8 Tex. Juris. 749, "Carriers," § 554, in discussing the duty of the carrier as regards stations and landing platforms, the Texas rule is stated:

"The duty of a carrier with respect to the safety of its station applies to all parts of the premises to which passengers may properly resort."

Furthermore, the fact that the Crown Coach Company was using the station of the Greyhound Bus Company does not allow the appellant to escape liability, for in 8 Texas Juris. 751, "Carriers," § 555, the Texas rule is stated:

"Union Depot.—Carriers may be held jointly liable for an injury to a passenger which was caused by an unsafe depot approach which was jointly used by several companies and to the maintenance of which they, by joint arrangement, contributed."

III. *The Sufficiency of the Lighting in the Shed Where the Passenger Was Injured.* This case was not tried on the theory that the obstacle over which Mrs. Whitaker stumbled had been in the pathway sufficiently long for the carrier to have notice of its presence. (See 10 Am. Juris. 224). The basis of negligence on which this case was tried was that, there was an insufficiency of lighting in the shed, so that the passenger was unable

to see the obstacle that caused her to fall. Here, again, we call attention to the fact that we apply the law of Texas.

The trial court charged the jury that it was the duty of the defendant (appellant here) "to light the platform, approaches, and premises at the station in Texarkana where passengers are discharged, and if the premises where the defendant's bus stopped were dark and unlighted and visibility obstructed, and because of the lack of such light plaintiff sustained the injury complained of in her complaint without fault on her part," then the plaintiff could recover. Appellant challenges this instruction as (A) being contrary to the law of Texas, and (B) unsupported by definite proof. We examine these contentions.

(A). In 8 Tex. Juris. 762, "Carriers," § 560, the rule is stated as regards the duty to keep the station lighted:

". . . The carrier's responsibility in this regard may not be evaded by contracting with another for the performance of the duty; nor, where the carrier depends upon street lights for the illuminating of its premises, will it be relieved from liability because the light is intercepted by transfer vehicles, which are subject to control and regulations. . . . Whether or not the carrier was negligent in failing to furnish sufficient light is ordinarily a question of fact for the jury."

In *Stewart* v. *I. & G. N. R. Co.*, 53 Tex. 289, 37 Am. Rep. 753, (decided in 1880), the Supreme Court of Texas held sufficient on demurrer a complaint in which the plaintiff alleged the negligence of the carrier to consist in not providing "proper lights and accommodations for passengers." In that case the passenger claimed to have received injuries because of inadequate lighting at the freight depot where the passenger was discharged. The court said: "Whether it was, under the circumstances, negligence in the railroad not to provide lights at the freight depot, was a question of fact for the jury." See,

544

also, *M. K. & T. Ry. Co.* v. *Miller,* 8 Tex. Civil App. 241, 27 S. W. 905. The general rule is in accordance with the Texas case. In 13 C. J. S. 1343, "Carriers," § 718, in stating the carrier's duty to keep its premises lighted, the text continues: "What constitutes proper lighting at any particular station depends upon the character and extent of business transacted, and the character, situation, and surroundings, of the station with reference to physical conditions affecting the security of persons in the proper use of the premises." See, also, 10 C. J. 920. We reach the conclusion that the instruction was not contrary to the Texas law.

(B). The appellant challenges this instruction as unsupported by definite proof. The plaintiff and her witnesses testified that it was a dark rainy day, and that it was "very dark" under the shed, and that there was an *insufficiency* of lighting rather than an *absence* of all lights. Appellant claims that the expression "very dark" is a conclusion without probative force, and therefore the proof was insufficient. To support this claim, appellant cites *Richard-Lightman Theater Corp.* v. *Vick,* 201 Ark. 1001, 147 S. W. 2d 731; *Peck* v. *Yale Amusement Co.* (Mo.) 195 S. W. 1033, and *Falk* v. *Stanley Fabian Corp.,* 115 N. J. L. 141, 178 At. 740, as cases holding that the expression "very dark" is a conclusion without probative force. But all the cases cited by appellant, on this point, are cases involving injuries alleged to have been sustained by patrons in that part of a moving picture theater where the picture was being shown, and it was, necessarily, a place of semi-darkness. The rule in these cases would not be applicable to a place which a carrier, as in the case at bar, had selected and constituted as a proper place to discharge passengers. The necessity for semi-darkness, as in moving picture theater, would not exist in a station of a carrier. In 143 A. L. R. 61 there is an exhaustive annotation on the subject "Duty and Liability as Regards Lighting Conditions in Theater"; and it is there pointed out, that cases involving lighting conditions in the theater where the picture was being projected are not applicable to lighting conditions in

other places, even in the theater, where semi-darkness is not required. Therefore, we conclude that the proof, about the insufficiency of the lighting at the place where the passenger was injured, was sufficient to take the case to the jury.

IV. *The Way of Egress.* Appellant contends that Mrs. Whitaker was not pursuing the proper way of egress when she received her injuries. Appellant says that when she alighted from the bus she should have walked directly south to the elevated pathway and through the waiting room, and then to the street, rather than to go east to pass directly from the shed to the street.

We see no merit in this contention. Mrs. Whitaker asked the bus driver which way to go to get to the Tri-State bus station; and she testified: "He told me to go straight through the shed across the street." Again, she testified: "He said, 'go straight ahead and cross the street.'" She stated that she was doing exactly what the bus driver told her to do. The fact that the defendant's witnesses might have contradicted Mrs. Whitaker on this point is immaterial; because the jury, by its verdict, accepted her testimony, and on appeal we take that view of the evidence most favorable to the appellee. *Peoples Loan & Investment Co.* v. *Whittle,* 205 Ark. 35, 166 S. W. 2d 1013.

V. *Plaintiff's Instruction Number Three.* The court told the jury that if the bus stopped at an "unusual stopping place in the station" which was unsafe by reason of improper lighting, etc., then the defendant would be guilty of negligence. The appellant's argument against the instruction is that there was no evidence that where the bus stopped was "an unusual stopping place." We think the objection is untenable. The defendant had shown by the evidence that there was an elevated pathway on the south side of the shed where passengers could alight, and had urged that Mrs. Whitaker should have used that pathway in leaving the shed. Yet the Crown Coach bus in which Mrs. Whitaker was riding

was stopped a considerable distance away from this elevated pathway. The place where the bus stopped and where Mrs. Whitaker was directed to alight might have been the place where that bus stopped regularly; but it was *unusual* in view of the proof of the elevated pathway as made by the appellant, and it was *unusual,* so far as Mrs. Whitaker was concerned, to discharge her twenty or thirty feet away from the elevated pathway and in a place of semi-darkness, and expect her to find her way to the elevated pathway, rather than to follow the directions given her by the bus driver as previously mentioned.

VI. *Excessiveness of the Verdict.* Finally, appellant says the verdict is excessive. Mrs. Whitaker received $3,000 and Mr. Whitaker received $750. Mrs. Whitaker suffered a fracture of the kneecap on February 2, 1943, and was placed in a cast extending from her ankle to her hip. She remained for seventeen days in a Texarkana hospital, and was treated daily by a physician. Then she was removed by car to her daughter's home in New Iberia, Louisiana, and was treated by a physician, who removed the cast. Mrs. Whitaker testified that her leg, toes and ankle were badly swollen for several months after the cast was removed. Three months and twenty-five days after the injury she was removed to her home in Tulsa. She testified (June 19, 1944) that her leg was still stiff, and she could not flex it, and that she was still being treated for the injury, and that she was unable to do her usual household duties, and was still using crutches. Hospital and doctors' bills totalling $302 had been paid by her or her husband. The evidence showed that, at best, she would continue to suffer for some time. With these facts and others in the record, we think $3,750 was not an excessive recovery; and the excessiveness is the only point argued by the appellant under this assignment.

We view the verdict as being $3,750, the total recovery, rather than as apportioned by the jury; because the elements and the persons entitled to recover are

governed by the law of Texas. In Texas, all damages recoverable for personal injuries to the wife constitute a part of the community estate. *Taylor* v. *Catalon,* 140 Tex. 38, 166 S. W. 2d 102. The husband alone may sue for damages for personal injuries to his wife, but the wife may not sue alone. *Loper* v. *Western Union Tel. Co.,* 70 Tex. 689, 8 S. W. 600; *Roberts* v. *Magnolia Petroleum Co.,* 142 S. W. 2d 315, affirmed 135 Tex. 289, 143 S. W. 2d 79; *Yellow Cab & Baggage Co.* v. *Smith,* 30 S. W. 2d 697; *Lucas* v. *Dallas County,* 138 S. W. 2d 179; *Rankin* v. *Kerrville Bus Co.,* 115 S. W. 2d 997. However, the fact that the wife joins in the suit does not affect the judgment, particularly where no complaint was made. The elements of damages for which recovery may be had in such a case as this are discussed in the following Texas cases: *Pullman Palace Car Co.* v. *Smith,* 79 Tex. 468, 14 S. W. 993, 13 L. R. A. 215, 23 Am. St. Rep. 363; *Martin* v. *Weaver,* 161 S. W. 2d 812; *Neville* v. *Mitchell,* 28 Tex. Civ. App. 89, 66 S. W. 579; *San Antonio & A. P. R. Co.* v. *Belt,* 24 Tex. Civ. App. 281, 59 S. W. 607. The above-cited Texas cases support the awarding of damages to the husband for the loss of services, etc., of his wife.

By the verdict here, part of the recovery was awarded to the wife and part to the husband, whereas in Texas the entire award should have been in favor of the husband. The division of the award is inconsequential because both the husband and wife were parties to the suit. The husband allowed a part of the recovery to be taken in favor of the wife; and this would probably create a presumption of a gift from him to her. *S. P. Ry. Co.* v. *Ulmer,* 286 S. W. 193; *Lone Star Gas Co.* v. *Haire,* 41 S. W. 2d 424. Since the husband was a party to the judgment, it would bind him so that he could not maintain a subsequent suit for other recovery. It is immaterial to the defendant (appellant here) whether the award was in favor of the husband or wife, so long as the defendant is only required to make one payment. The verdict of $3,750 was for that purpose.

Finding no error, the judgment is affirmed.