**EMERSON et al. v. CAROLINA CAS. INS. CO.**

**No. 14772.**

United States Court of Appeals Eighth Circuit.

Aug. 11, 1953.

Rehearing Denied Sept. 4, 1953.

14

Wilburn A. Duncan, St. Louis, Mo. (Joe C. Barrett, Jonesboro, Ark., Karl P. Spencer, St. Louis, Mo., and Edward L. West-brooke, Jonesboro, Ark., on the brief), for appellants.

G. D. Walker, Jonesboro, Ark. (Charles Frierson and Frank Snellgrove, Jr., Jonesboro, Ark., on the brief), for appellee.

Before THOMAS, RIDDICK, and COLLET, Circuit Judges.

COLLET, Circuit Judge.

This is an appeal from the United States District Court for the Eastern District of Arkansas, wherein the appellee-plaintiff was awarded a declaratory judgment to the effect that it need not defend, on behalf of Defendant-Appellant Emerson, a suit pending between Emerson and Defendant-Appellant Goodman, on the ground that under the insurance contract and the facts, appellee's policy of insurance issued to Emerson did not cover Goodman's injuries.

Appellee is a North Carolina insurance company doing business in the State of Arkansas. On May 22, 1951, it issued a policy of insurance to Emerson covering certain trucks, insuring Emerson against liability for claims for bodily injuries arising out of the operation of these trucks and obligating appellee to defend any claims and pay all judgments up to certain specified amounts.

This policy was in effect September 15, 1951, and contained an endorsement which read as follows:

"This Policy Does Not Cover Passengers Either When Carried For A Monetary Consideration Or As Guests Without Any Implied Charge.

"And that no claim or action shall be maintained under this policy for any injuries sustained by or inflicted upon any person or persons while riding upon or within any vehicle, named or operated under the said policy."

Emerson was operating trucks as a carrier of freight. A few days prior to September 15, 1951, he made arrangements with Goodman to haul a truckload of furniture from St. Louis, Missouri, to Jonesboro, Arkansas. Goodman drove to St. Louis with his brother-in-law, purchased

the furniture, and notified Emerson to pick up the load. Emerson arrived in St. Louis about noon on September 15, 1951, accompanied by his son-in-law and driving an open-body tractor-trailer truck. The trailer was equipped with a supporting device of two dolly wheels which could be lowered to support the trailer when detached from the tractor. The trailer was attached to the tractor on a fifth wheel pivoting device and could be detached by disconnecting pins attaching it to this device.

During the loading, Emerson's son-in-law complained about riding in the truck on the return trip because he was not feeling well, and either requested Goodman or Goodman volunteered to change places with him on the truck. That was done, and Emerson's son-in-law made the return trip in Goodman's car with Goodman's brother-in-law. Goodman's presence in the truck was purely an accommodation and it is stipulated that it was not contemplated that he would render any services in connection with the ride in the truck. Emerson and Goodman left St. Louis in the truck and proceeded to a point three miles north of Bonne Terre, Missouri, with Emerson driving, where a fire developed around the drive shaft of the tractor. Emerson drove the truck onto the shoulder of the highway and stopped. Both men alighted and unsuccessfully attempted to extinguish the flames. Emerson then determined to disconnect the tractor from the trailer and directed Goodman to pull the pins on the coupling device. The dolly wheels to support the trailer were not lowered. Goodman claims he was injured when Emerson drove the tractor forward while he was attempting to disconnect the pins. Emerson testified Goodman was unable to remove the pins and he did so himself, returned to the cab, and drove the tractor from under the trailer. Emerson stated that when he started back to the cab Goodman was about seven feet to one side of the trailer and he did not see him again until a patrolman informed him that Goodman was injured. Emerson also testified that there was a period of from 15 to 20 minutes from the time the unit was originally driven onto the shoulder of the highway until the tractor was driven from beneath the trailer, causing it to fall. It was the view of the trial court, in which we concur, that this dispute of facts is immaterial in the determination of the legal questions presented.

Two or three days after the occurrence, a representative or investigator for the appellee took a signed statement from Emerson, who informed him that Goodman was not riding in the truck when he was injured, but no question was raised as to coverage under the policy. Goodman filed suit on October 10, 1951, in the Circuit Court of the City of St. Louis against Emerson for injuries arising from the accident. Counsel employed by the appellee filed a motion to dismiss this action because of improper venue. Goodman dismissed this action on November 7, 1951, and refiled the suit in St. Francois County, Missouri, on January 14, 1952. Appellee's counsel filed an answer in the latter suit on behalf of Emerson. This latter action is now at issue and awaiting a trial setting.

On February 25, 1952, appellee filed the present action, seeking a declaratory judgment that it was under no obligation to defend or assume liability in regard to the case pending in St. Francois County, Missouri. Emerson's receipt of summons in the declaratory judgment case was the first notification he had that appellee was denying liability under its contract. The trial court entered the declaratory judgment as prayed. It is from that judgment that this appeal is prosecuted.

The dominant question now involved is whether Goodman was at the time of his injury a passenger in the truck in the light of the exclusion endorsement of the insurance policy. The trial court reached the conclusion, stated in his memorandum opinion, that Goodman was a passenger within the meaning of the insurance policy at the time of the accident and hence the appellee would not be liable to Emerson nor Goodman under the policy.

██ The insured was a resident of Arkansas at the time of the issuance of the policy. Delivery was by the terms of the agreement the final act necessary to put the policy into effect. The policy was de-

livered to the insured in Arkansas. Therefore, the policy was an Arkansas contract and questions relating to its construction are to be determined in accordance with the applicable provisions of the law of Arkansas. New York Life Insurance Co. v. Jackson, 304 U.S. 261, 58 S.Ct. 871, 82 L. Ed. 1329; Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Massachusetts Protective Ass'n v. Oden, 186 Ark. 844, 56 S.W.2d 425.

There does not appear to be any decision of the Arkansas Supreme Court construing the pertinent provisions of a contract such as this. Therefore, the extent of the assistance that we may obtain from the Arkansas courts is limited to general principles of construction, cases not dealing with the particular subject but which may furnish some assistance by analogy, and the opinion of the trial court. Appellants contend that the paragraph—"This policy does not cover passengers either when carried for a monetary consideration or as guests without any implied charge"—is limited and qualified by the succeeding paragraph—"And that no claim or action shall be maintained under this policy for any injuries sustained by or inflicted upon any person or persons while riding upon or within any vehicle, named or operated under the said policy"—with the result that Goodman could not have been a passenger unless at the time of his injury he was "riding upon or within" the vehicle. The trial court did not agree, and we do not. While a passenger is ordinarily riding upon or within a vehicle, it is not always necessary that he be doing so in order to be a passenger, as we shall presently see. And while a person riding upon or within a vehicle is ordinarily a passenger, yet all persons riding upon or within a vehicle may not be passengers. Some may be mere trespassers, riding without even the knowledge of the operator of the vehicle.

■ It is a cardinal rule of construction that effect must be given to all parts of a contract, if that may reasonably be done.

If, as appellants contend, a passenger must, to be a passenger, be riding upon or within the vehicle, there would have been no apparent necessity for the inclusion of the second paragraph relating to passengers. Witherspoon v. Lumbermen's Mutual Insurance Co., 211 Ark. 844, 203 S.W.2d 185; National Life Insurance Co. v. Gregg, 168 Ark. 80, 269 S.W. 62. For both of the foregoing reasons the two paragraphs cannot be construed as limitations upon each other.

First considering the meaning of the paragraph defining passengers. It seems clear to us that the policy simply excluded both types of passengers, i. e., pay passengers and guest passengers. Hence, the meaning of the word "passenger" as used in the policy becomes of primary importance. In determining that meaning, we are relegated to general definitions of the term "passenger", since, as stated, the Arkansas courts have not defined it when used in this manner.

It would be difficult, if not impossible, to state a general rule or definition of a passenger which would embrace all essential elements under all circumstances. Puckett v. Pailthorpe, 207 Iowa 613, 223 N. W. 254. And it would be of no assistance to do so in this case, since we are now dealing with the relationship arising under only one of the many possible conditions under which it could arise. Therefore, the several cases cited by counsel, some of which are referred to in the trial court's memorandum, dealing with the question of when and under what circumstances a person is a passenger of a common carrier [1] are not determinative of the present question. As stated in Aschenbrenner v. U. S. F. & G. Co., 292 U.S. 80, 84, 54 S.Ct. 590, 592, 78 L.Ed. 1137:

"* * * it is unnecessary here to follow the niceties of legal reasoning and terminology applied in negligence suits against common carriers, for we are interpreting a contract and are

---

1. Arkansas Cent. R. Co. v. Bennett, 82 Ark. 393, 102 S.W. 198; Missouri Pac. R. Co. v. Kennedy, 153 Ark. 77, 239 S.W. 376, 35 A.L.R. 753; Wilson v. Pan-American Bus Lines, 217 N.C. 586, 9 S.E.2d 1; White v. Alleghany Cab Co., Sup., 29 N.Y.S.2d 272; Crown Coach Co. v. Whitaker, 208 Ark. 535, 186 S.W.2d 940.

concerned only with the sense in which its words were used."

■ The trial court's conclusion that Goodman was a passenger at the time of his injury was based largely upon the analogy which the judge drew from common carrier cases wherein it has been held in Arkansas, as well as generally, that ordinarily a person entering upon the relationship of a passenger to a common carrier continues to be a passenger until the end of the journey and a reasonable opportunity to depart from the carrier's premises, unless he sooner voluntarily terminates the relationship. Arkansas Cent. R. Co. v. Bennett, 82 Ark. 393, 102 S.W. 198; Missouri Pac. R. Co. v. Kennedy, 153 Ark. 77, 239 S.W. 376, 35 A.L.R. 753.

■ We are referred to a number of cases arising under the so-called state guest statutes as furnishing authority by analogy for determining when a person is a passenger in a privately-owned automobile. Those cases are likewise helpful but not determinative. The variety of the particular language found in the numerous state guest statutes produces a variety of results in determining whether in an individual case, under the special facts incident thereto, a person was or was not a guest passenger. A number of those cases are cited in the margin.[2]

In Massachusetts, where there is no guest statute, the courts have, in effect, created the relationship of a guest passenger in a privately-owned automobile by judicial decision.[3]

Through all of these cases, although not expressed in positive language, runs what we conceive to be a basic principle, to wit, that a person will or will not be held to be a passenger, dependent upon whether or not at the particular time in question, and in view of the character of the contractual relationship—whether with a common carrier, a private carrier, or under a guest statute—the relationship has in fact been interrupted or terminated. And whether it has been interrupted or terminated will be determined by the nature of the action of the person under the circumstances, and in light of the character of the relationship. Thus, in common carrier cases, because of the somewhat technical legal relationship existing between a person being transported for hire and the carrier, the person has been held to be a passenger for specific purposes when he would not have been so characterized under the ordinary meaning of the word "passenger" or under guest statutes. If the general rule ordinarily applied in common carrier cases is to be applied without limitation or exception in cases such as this, the conclusion reached by the trial court would no doubt be correct, as obviously, in this case the entire journey, as originally contemplated, had not ended. But even in common carrier cases, and certainly in cases where the common carrier relationship does not exist, the relationship of "passenger" is not impossible of termination, or at least interruption, prior to the termination of the journey as originally intended. Limited to the present case, our problem is to determine whether the relationship of "passenger", as that term is ordinarily understood,[4] was interrupted. And in determining that, we must, as stated, look to the acts being performed

2. Marsh v. Hogeboom, 167 Kan. 349, 205 P.2d 1190; Smith v. Pope, 53 Cal.App. 2d 43, 127 P.2d 292; Castle v. McKeown, 327 Mich. 518, 42 N.W.2d 733; Eshelman v. Wilson, 83 Ohio App. 395, 80 N.E.2d 803; Harrison v. Gamatero, 52 Cal. App.2d 178, 125 P.2d 904; Hunter v. Baldwin, 268 Mich. 106, 255 N.W. 431; Langford v. Rogers, 278 Mich. 310, 270 N.W. 692; Moreas v. Ferry, 135 Cal. App. 202, 26 P.2d 886; Prager v. Isreal, 15 Cal.2d 89, 98 P.2d 729; Rohr v. Employers' Liab. Assur. Corp., 243 Wis. 113, 9 N.W.2d 627; Puckett v. Pailthorpe, 207 Iowa 613, 223 N.W. 254; Samuelson v. Sherrill, 225 Iowa 421, 280 N.W. 596.

3. Fone v. Elloian, 297 Mass. 139, 7 N.E. 2d 737; Ruel v. Langelier, 299 Mass. 240, 12 N.E.2d 735; Head v. Morton, 302 Mass. 273, 19 N.E.2d 22; Ethier v. Audette, 307 Mass. 111, 29 N.E.2d 707; Bragdon v. Dinsmore, 312 Mass. 628, 45 N.E.2d 833, 146 A.L.R. 680.

4. Aschenbrenner v. U. S. F. & G. Co., 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137; Life & Casualty Ins. Co. of Tennessee v. De Arman, 192 Ark. 11, 90 S.W.2d 206; Missouri State Life Ins. Co. v. Martin, 188 Ark. 907, 69 S.W.2d 1081.

by the person whose status is to be determined, under all the circumstances. If what Goodman was doing at the time of his injury was a reasonable incident to his relationship of the kind of passenger he initially was, he will continue to be a passenger although not physically in or upon the vehicle. Ruel v. Langelier, 299 Mass. 240, 12 N.E.2d 735. But if what Goodman was doing at the time of his injury was not a reasonable incident to that relationship, it must be said to have been terminated, or at least temporarily interrupted.

The record shows that after the unsuccessful effort to extinguish the fire in the tractor, Emerson, the owner and driver of the conveyance, directed Goodman to uncouple the trailer and that Goodman undertook to do so. Was it a reasonable incident to the relationship of a guest passenger who was not to render any service in connection with the operation of the truck that when the truck caught on fire, and was stopped on the shoulder of the highway, that the occupant, as a passenger, would be instructed to uncouple the burning tractor from the trailer, requiring him to leave the vehicle, enter between the tractor and the trailer, and perform an act which is normally and ordinarily only performed by the operator of the conveyance, and then only at the beginning or end of a journey? We do not think so. We have been referred to cases where a person who is a guest passenger temporarily leaves an automobile for the purpose of getting a sandwich [5], or assisting in the changing of a tire [6] has been held to continue the relationship, while in other cases arising under guest statutes the relationship has been held to have been interrupted or terminated.[7] The peculiar facts in those and in every case must control

each case. Under the facts in this case, in our judgment Goodman ceased to be a passenger when he was instructed by Emerson to perform a duty ordinarily unheard of as an incident to a passenger relationship to a carrier such as Emerson.

■■ The argument is advanced by appellee that Goodman should have been held to have been riding upon or within the vehicle, within the meaning of the second above quoted paragraph of the exclusion clauses. A number of cases are cited in support of that theory.[8] We do not find any of those cases apposite. Those cases deal with the question of whether insurance policies intending to insure a person in the use of a vehicle while "in or upon, entering or alighting from" the vehicle cover injuries received when the person was engaged in the use of a vehicle, but who was not actually, physically in or upon the vehicle. Under such circumstances a number of courts have held that since the purpose of the contract was to insure the insured in the "use" of the vehicle, the policy covered the injury although the person when injured was not physically "within or upon" the vehicle itself. Those cases are not, on the facts, authority here.

The second clause of exclusion did not clearly cover this situation. Hence, even if the language of this clause or paragraph is reasonably open to two constructions, that construction most favorable to coverage will be adopted. Aschenbrenner v. U. S. F. & G. Co., supra. Goodman was neither riding upon nor within the vehicle. Hence this clause did not apply to him.

For the reasons stated, the cause is reversed and remanded with directions that judgment be entered denying the judgment prayed for.

5. Ethier v. Audette, 307 Mass. 111, 29 N. E.2d 707.

6. Rohr v. Employers' Liability Assur. Corp., Ltd., of London, 243 Wis. 113, 9 N. W.2d 627.

7. Smith v. Pope, 53 Cal.App.2d 43, 127 P. 2d 292; Harrison v. Gamatero, 52 Cal. App.2d 178, 125 P.2d 904; Moreas v. Ferry, 135 Cal.App. 202, 26 P.2d 886; Prager v. Isreal, 15 Cal.2d 89, 98 P.2d 729; Puckett v. Pailthorpe, 207 Iowa 613,

223 N.W. 254; Samuelson v. Sherrill, 225 Iowa 421, 280 N.W. 596.

8. Sherman v. New York Casualty Co., R. I., 82 A.2d 839; Madden v. Farm Bureau Mutual Auto Ins. Co., 82 Ohio App. 111, 79 N.E.2d 586; Lokos v. New Amsterdam Casualty Co., 197 Misc. 40, 93 N.Y. S.2d 825; Goodwin v. Lumbermens Mutual Casualty Co., Md., 85 A.2d 759; Preston v. Aetna Ins. Co., 193 N.Y. 142, 85 N.E. 1006, 19 L.R.A.,N.S., 133.